BOOK 0517 PAGE 347

## SETTLEMENT AND RELEASE
## BLM Serial No. AA-8297

This Settlement and Release is entered into by and between the United States Department of the Interior, the Bureau of Land Management (BLM), the Bureau of Indian Affairs (BIA), the State of Alaska (the State), and Claude Ryan Showalter (applicant). In consideration of the mutual benefits stated below, the parties agree as follows:

1.  The applicant filed a timely application for a Native Allotment pursuant to the Alaska Native Allotment Act of May 17, 1906, 43 U.S.C. 270-1 et seq. The land for which the applicant intended to apply is more particularly described as follows:

    > Lot 10, Section 16 and Lot 12 Section 21, Township 7 North, Range 11 West, Seward Meridian, Alaska, containing 41.10 acres, as shown on plat of survey accepted on May 12, 1966 and supplement plat accepted on September 8, 1967 by the United States Department of Interior, Bureau of Land Management, Washington D. C.

2.  Legal title to the land was conveyed by the United States to the State of Alaska pursuant to the Mental Health Enabling Act of July 28, 1956, 70 Stat. 711, as confirmed by the Alaska Statehood Act of July 7, 1958, 72 Stat. 339, under State selection application A-050580 (MH-25) dated November 17, 1959 and Tentatively Approved on October 6, 1964.

3.  The applicant alleged that he commenced use and occupancy of the land prior to the time that the State filed its application for conveyance of the same land with the Department of the Interior. If this allegation is proven true, the applicant is a member of the plaintiff case in Aguilar v. United States, 474 F. Supp. 840 (D. Alaska 1979), and will be entitled to relief pursuant to this court's July 31, 1979 Opinion and the Stipulated Procedures for Implementation of Order (Stipulated Procedures) dated February 9, 1983.

4.  The BLM has determined that the applicant's allotment application is not invalid for reason of any legal defects as described in Stipulation No. 1 of the Stipulated Procedures.

5.  Subject to the State's Best Interest Finding and upon conformance to survey, the State agrees to quitclaim the following described real property within the northerly portion of Lot 10, Section 16, Township 7 North, Range 11 West, Seward Meridian, Alaska;

    > Beginning at a point where the east/west south 1/16 line intersects the ordinary high water mark on the east shoreline of Bishop Lake and the True Point of Beginning

EXHIBIT 1
Page 1 of 9

BOOK 0517 PAGE 348

and Meander Corner No. 1; thence North 89° 56' 30" East along the east/west south 1/16 line approximately 660.00 feet to a point on the section line  between Sections 15 and 16 and Corner No. 2; thence South 0° 05' 00" East along the said section line approximately 660 feet to corner No. 3; thence South 89° 56' 45" West approximately 660 feet to a point on the ordinary high water mark of the east shoreline of Bishop Lake and Meander Corner 4; thence northerly with meanders on the ordinary high water mark of Bishop Lake approximately 660 feet to Meander Corner No. 1 and True Point of Beginning, containing ten (10) acres more or less;

to the United States pursuant to AS 38.05.035(b)(9) for reconveyance to the applicant under the Alaska Native Allotment Act, subject to the following easements, reservations, exceptions and restrictive covenants:

(a)  the State of Alaska hereby expressly saves, excepts and reserves out of the grant hereby made, unto itself, its lessees, successors, and assigns forever, all oils, gases, coal and associated substances which may be in or upon said land above described, or any part thereof, and the right to explore the same for such  oils, gases, coal and associated substances and it also hereby expressly saves and reserves out of the grant hereby made, unto itself, its lessees, successors, and assigns forever, the right to enter by itself, its or their agents, attorneys, and servants upon said land, or any part or parts thereof, at any and all times for the purpose of opening, developing, drilling, and working mines or wells on these or other land and taking out and removing there from all such oils, gases, coal and associated substances and to that end it further expressly reserves out of the grant hereby made, unto itself, its lessees, successors, and assigns forever, the right by its or their agents, servants and attorneys at any and all times to erect, construct maintain, and use all such buildings, machinery, roads, pipelines, powerlines, and railroads, sink such shafts, drill such wells, remove such soil, and to remain on said land or any part thereof for the foregoing purposes and to occupy as much of said land as may be necessary or convenient for such purposes hereby expressly reserving itself, its lessees, successors, and assigns, as a foresaid, generally all rights and power in, to, and over said land, whether herein expressed or not, reasonably necessary to render beneficial and efficient the complete enjoyment of the property and rights hereby expressly reserved;

(b)  the State of Alaska further reserves to itself, its lessees, successors, and assigns forever, the right to royalties from the

EXHIBIT 1
Page 2 of 9

BOOK 0517 PAGE 349

coal, oils, gases, and associated substances reserved here in
and the right to regulate, administer, and manage the rights
reserved here in;

(c)  the State of Alaska further reserves to itself, its lessees,
successors, and assigns forever, the right to exercise the rights
reserved in subparagraphs (a) and (b) pursuant to unit agreements;

(d)  an easement fifty (50) feet in width, abutting, west of and along the
surveyed section line in common with Section 15 and Section 16,
Township 7 North, Range 11 West, Seward Meridian, for use as a
public highway and for public utilities as established by AS 19.10.010;

(e)  a public access easement 50 feet in width abutting and upland of the
ordinary high water mark of Bishop Lake pursuant to AS 38.05.127;

(f)  in addition the reconveyance is subject to all other platted
easements and reservations and valid existing rights.

6.  The State agrees that any coal, oil and gas leases issued after the date the
quitclaim deed is issued shall contain provisions for payment of damages according
to AS 38.05.130.

7.  The applicant agrees that the land description in paragraph 5 of this agreement is
accurate and relinquishes whatever right or claim he may have to the remaining
land, consisting of approximately 31.10 acres, described in paragraph 1 of this
agreement and forever waives whatever right he may have to amend the legal
description, including an amendment pursuant Section 905(c) of the Alaska National
Interest Lands Conservation Act, 43 U.S.C. 1634(c).

8.  The BLM will not credit the State's acreage entitlement under the Mental Health
Enabling Act of July 28, 1956, 70 Stat. 709, 711, 712, as confirmed by the Alaska
Statehood Act of July 7, 1958, 72 Stat. 339, with the amount of acres quitclaimed to
it by the State pursuant to this Settlement and Release, because the State is
retaining ownership of the reserved minerals.

9.  The BLM, the BIA, and the applicant hereby waive and release the State from, any
and all claims they may have against the State arising from the State's ownership,
use, development, operations on or under, or maintenance of the land prior to the
date that the quitclaim deed is issued.

10. The BLM, the BIA, the applicant and the State agree that this  Settlement and
Release, as implemented, satisfies any and all obligations or liability that the BLM
or the State may have to the applicant under the Opinion in Aguilar v. United
States, 474 F. Supp. 840 (D. Alaska 1979) and the Stipulated Procedures, and the
BLM, BIA, and the applicant hereby waive any right to bring an action against the

EXHIBIT 1
Page 3 of 9

BOOK 0517 PAGE 350

Settlement and Release
BLM AA-8297

State for the recovery of title to any further interest in lands based on a Native allotment claim of the applicant.

11. The applicant acknowledges that he has received counseling from the BIA with regard to the precise terms of this Settlement and Release. The applicant further acknowledges that he has been represented by legal counsel throughout the course of negotiations which led to the execution of the Settlement and Release. The applicant desires to enter into this Settlement and Release, being fully informed of its terms, contents, and effect.

12. The BLM, the BIA, the applicant and the State intend the terms of this Settlement and Release to be binding upon their heirs, administrators, executors, successors, and assigns forever.

13. The BLM, the BIA, the applicant and the State desire to reach a full and final compromise, settlement, and release of all matters arising out of the facts described above.

14. <u>Definitions</u>. Whenever used in this agreement the following word has the following meaning:

(a) "State" means the State of Alaska, its agencies, employees, agents, successors, and assigns, lessees, permittees, contractors and subcontractors;

(b) "oil" means crude petroleum oil and other hydrocarbons, regardless of gravity, that are produced in liquid form by ordinary production methods, including liquid hydrocarbons known as distillate or condensate recovered by separation from gas other than at a gas processing plant;

(c) "gas" means all natural gas (except helium gas) and all other hydrocarbons produced that are not defined in this lease as oil;

(d) "associated substances" means all substances except helium produced as an incident of production of oil or gas by ordinary production methods and not defined in this lease as oil or gas;

(e) "unit" means a group of leases covering all or part of one or more potential hydrocarbon accumulations, or all or part of one or more adjacent or vertically separate oil or gas reservoirs which are subject to a unit agreement;

EXHIBIT 1
PAGE 4 9

Settlement and Release
BLM AA-8297

BOOK 0517 PAGE 351

    (f)  "unit agreement" means the agreement executed by the State of Alaska, working-interest owners, or royalty owners creating the unit.

**IN WITNESS WHERE OF, the parties have signed this Settlement and Release below.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*LAST ITEM\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

EXHIBIT 1
Page 5 of 9

Settlement and Release
BLM AA-8297

BOOK 0517 PAGE 352

DATED: 7-30-97    *Claude Ryan Showalter*

Claude Ryan Showalter (Applicant)

STATE OF ALASKA    )
                   ) ss.
3rd Judicial District )

THIS IS TO CERTIFY that on this 30th day of July, 1997, before me appeared Claude Ryan Showalter known to me to be the person named herein and who executed the Settlement and Release and acknowledged voluntarily signing the same.

*Pearl A. Chonar*

Notary Public for the State of Alaska
My Commission Expires: Nov. 1, 2000

1997 AUG -5 AM 10: 20
BLM AK SO 950

EXHIBIT 1
PAGE 6 OF 9

Settlement and Release
BLM AA-8297

BOOK **0517** PAGE **353**

UNITED STATES OF AMERICA
Department of the Interior
Bureau of Indian Affairs

DATED: _August 1, 1997_          by: _Pearl G. Chanar_

title: Acting Agency Superintendent

STATE OF ALASKA          )
                         ) ss.
~~third~~ Judicial District )

THIS IS TO CERTIFY that on this ___1___ day of _August_
19~~97~~, before me appeared _Pearl Chanar_
of the Bureau of Indian Affairs of the Department of Interior of the United States
of America, who executed the Settlement and Release and acknowledged
voluntarily signing the same.

_Rachel White_
Notary Public for the State of Alaska
My Commission Expires: _April 25, 2001_

NOTARY
PUBLIC
RACHEL WHITE
STATE OF ALASKA

1997 AUG -5 AM 10: 20
BLM AK SO 550

EXHIBIT 1
Page 7 of 9

Settlement and Release
BLM AA-8297

BOOK 0517 PAGE 354

UNITED STATES OF AMERICA
Department of the Interior
Bureau of Land Management

DATED: *August 25, 1997*          by: *Sharon E Warren*

title: *Chief, Branch of 969 Adjudication*

STATE OF ALASKA          )
                         ) ss.
3rd Judicial District    )

THIS IS TO CERTIFY that on this ___25th___ day of ___August___
19_97_, before me appeared ___Sharon E. Warren___
of the Bureau of Land Management of the Department of the Interior of the
United States of America, who executed the Settlement and Release and
acknowledged voluntarily signing the same.

_____
Notary Public for the State of Alaska
My Commission Expires:_____3/7/2001____

State of Alaska
NOTARY PUBLIC
Robin Rodriguez
My Commission Expires 3/7/2001

EXHIBIT ___1___
Page __8__ of __9__

Settlement and Release
BLM AA-8297

BOOK 0517 PAGE 355

STATE OF ALASKA
Department of Natural Resources
Division of Land

DATED: __10 - 28 -97__          by: _____
                                Jane Angvik,
                                Director, Division of Land

STATE OF ALASKA          )
                         ) ss.
3rd Judicial District  )

 THIS IS TO CERTIFY that on this __28th__ day of __October__
19 __97__, before me appeared __Jane Angvik__
Director of the Division of Land of the Department of Natural Resources of the
State of Alaska, who executed the Settlement and Release and acknowledged
voluntarily signing the same.

_____Sharon Tumacder_____
Notary Public for the State of Alaska
My Commission Expires:_____   **My Commission Expires:**
                                    **February 12, 2001**

EXHIBIT ____1____
Page __9__ of __9__